```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JAKE LEE,                                               )
                        Plaintiff,                      )
                                                        )
        -against-                                       )        Civil No. 07-CV-0338C(SR)
                                                        )
ACCESSORIES BY PEAK, and                                )
RAJESH SHAH,                                            )
                        Defendants.                     )
--------------------------------------------------------x
```

**MEMORANDUM IN SUPPORT OF PLAINTIFF
JAKE LEE'S MOTION FOR PARTIAL SUMMARY
<u>JUDGMENT OF WILLFUL PATENT INFRINGEMENT</u>**

**I.    <u>PRELIMINARY STATEMENT AND SUMMARY OF ARGUMENT</u>**

On December 14, 2007, this Court entered an Order (**Ex. A**), on consent of the parties, adjudging and decreeing:

(1)    That United States patent No. 6,418,936 ("the '936 Patent") (**Ex. B**), issued on July 16, 2002 for a "tobacco pipe," was duly and legally issued to Plaintiff as inventor of the subject matter thereof, including all right to recover for past infringement;

(2)    That the '936 Patent is valid and enforceable; and

(3)    That Defendants are permanently enjoined and restrained from infringing the '936 Patent by making, using, selling and/or offering for sale any and all pipes as described in the '936 Patent and/or equivalents thereof under the doctrine of equivalents in U.S. patent law.

The Order further provides for the Court's continuing jurisdiction over the action for purposes of enforcing the terms of the order and/or settlement between the parties and effectively ends any further litigation on the merits with respect to the validity and enforceability of the '936 Patent.

The complaint, which was filed by Plaintiff Jake Lee ("Plaintiff"), on May 24, 2007, alleges (1) infringement of the '936 Patent by Defendants Accessories By Peak and Rajesh Shah (collectively "Defendants") and (2) infringement of Plaintiff's rights in the trademark "Six Shooter". All that remains of the action post judgment, therefore, are the issues of patent infringement and consequent damages therefor, and Plaintiff's second, separate cause of action for trademark infringement, as to which no determination has yet been made by the Court.

Since the entry of the Court's Order on December 14, 2007, the parties' attempts at settlement of the case have been unsuccessful. No agreement has been reached either on the number of infringing sales made by Defendants or as to the amount of damages to be paid for such infringement. Therefore, Plaintiff has brought this motion for a partial summary judgment that Defendants have infringed the '936 Patent by the sale of their "6 Shooter" tobacco pipe ("6 Shooter"), and that such infringement is willful, calling for an increase of damages up to three times the amount found. Plaintiff has also requested that the Court order an accounting to determine the damages that are due to Plaintiff as a result of Defendants' infringement.

As demonstrated in the attached Claim Chart (**Ex. C**), every limitation in claims 1-6, 8-9 and 11-14 of the '936 Patent is literally found in Defendants' 6 Shooter tobacco pipe. Moreover, Defendants' infringement is willful having been committed with actual notice of Plaintiff's claim of infringement of the '936 Patent, since at least March 2003. Defendants' reckless and willful behavior calls for the imposition of enhanced damages under Federal Circuit authorities on willful infringement, including its recent decision in *In re Seagate Technology*, LLC, 497 F.3d 1360 (Fed. Cir. 2007).

Plaintiff's Six Shooter tobacco pipe is also covered by claims 1-6, 8-9 and 11-14 of the '936 Patent, as shown in the Claim Chart (**Ex. C**), thus providing the nexus between the patent

and the patented product that is required for a patentee to recover lost profits in a suit for patent infringement. Therefore, the Court is also requested to determine that lost profits are the basis on which damages for infringement are to be based.

A determination of the patent issues herein is likely to result in a resolution of the entire case, as part of an overall settlement that would include the unresolved trademark issues, which are separate and readily severable from the patent issues. Therefore, the Court is respectfully requested to render a partial summary judgment of willful patent infringement and to order an accounting of damages for such infringement based on lost profits, leaving for a later time a resolution of the remaining trademark issues, if that becomes necessary.

## II.     ARGUMENT

### A.     Summary Judgment Is Appropriate In This Case

"An issue may be decided on motion for summary judgment when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law." *Continental Can Company USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991) (citing Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-36 (1986); *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1571 (Fed. Cir. 1991)).  In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the opponent of the motion, *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473 (1962), and doubts resolved in favor of the opponent. *Cantor, dba Selden Drugs Co. v. Detroit Edison Co.,* 428 U.S. 579, 582 (1976). Once the moving party has satisfied its initial burden, the adverse party must establish a genuine issue of material fact by presenting actual evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248. Summary judgment is as available in patent cases as in other areas

of litigation. *Chore-Time Equipment, Inc. v. Cumberland Corp.,* 713 F.2d 774, 778-79, 218 U.S.P.Q. 673, 675. (Fed. Cir. 1983); *Knoll Pharmaceutical Company, Inc. v. Teva Pharmaceuticals USA, Inc*., 367 F.3d 1381, 1384 (Fed. Cir. 2004).

### B. The Defendants Are Estopped From Contesting The Issues Of Validity And Enforceability Of The '936 Patent

The Defendants are bound, as in a judgment after trial, by the consent judgment entered by the Court on December 14, 2007, decreeing that the '936 Patent is valid and enforceable against Defendants who are enjoined from any infringement thereof. This Court held in *Metallizing Engineering Co., Inc. v. B. Simon, Inc. et al.*, 67 F. Supp. 566, 569 (W.D.N.Y. 1946) that "[n]o distinction is to be drawn from the fact that this is a consent decree. It has the same effect as a judgment rendered on trial or on a contest of the issue." (citing *United States v. Swift & Co.*, 286 U.S. 106 (1932). *See Wallace Clark & Company, Inc. v. Acheson Industries, Inc*., 422 F.Supp. 20, 22 (S.D.N.Y. 1976) (holding that consent decree to which plaintiff was a party was *res judicata* as to issues of validity and infringement of patent); *See also Stein Industries, Inc. v. Jarco Industries, Inc.*, 33 F. Supp.2d 163, 171 (E.D.N.Y. 1999); *The Plastic Contact Lens Company v. Frontier of the Northeast, Inc*., 324 F. Supp. 213, 215, fn 2 (W.D.N.Y. 1969).

Since the '936 Patent has been adjudged valid and enforceable by the Court in its Order of December 14, 2007, and such determination is uncontestable by Defendants, the only issues remaining for determination in this action with respect to the '936 Patent are those of infringement and damages, including whether increased damages for willful infringement are warranted.

### C. Defendants' Infringement Of The '936 Patent Is Clear

This Court has held with respect to patent infringement:

> Generally speaking, "[a]n infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995). *Courts may resolve issues of claim construction in the context of a summary judgment motion, since claim construction is a matter of law. See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 376-78, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

*Moore U.S.A. Inc. v. The Standard Register Company*, 144 F.Supp.2d 188, 191 (W.D.N.Y. 2001) (emphasis added).

The terms of the asserted claims of the '936 Patent are fully and clearly described in the patent specification. No extrinsic evidence is required for their construction nor is there any need for a Markman hearing with respect to their meaning or scope. Further, as demonstrated in the attached Claim Chart (**Ex. C**), each and every limitation of claims 1-6, 8-9 and 11-14 of the '936 Patent is found in Defendants' 6 Shooter pipe. The only difference between the Defendants' 6 Shooter pipe and Plaintiff's patented Six Shooter pipe is the addition of a spring and ball attachment **16** (**Ex. C**, photos 3, 5) that helps to keep the magazine in place over the turret. But there is no limitation in the claims of the '936 Patent that covers such an element and it is irrelevant for purposes of claim infringement analysis. The attached Declaration of Plaintiff Jake Lee (**Ex. D**, Par. 4) authenticates the 6 Shooter pipe as that sold and/or offered for sale by Defendants. It will also be seen from the Claim Chart (**Ex. C**) that Plaintiff's Six Shooter tobacco pipe, authenticated in the Declaration of Lee (**Ex. D**, Par. 4), is also covered by the same claims of the '936 Patent as the Defendants' pipe.

### D. <u>Defendants' Infringement Of The '936 Patent Is Willful</u>

1. **Plaintiff Gave Actual Notice of Infringement of the '936 Patent to Defendants**

Plaintiff first discovered Defendants' infringement of the '936 Patent in March 2003 while attending the ASD Trade Show in Las Vegas, Nevada. Lee testified during his deposition on September 16, 2008 (**Ex. E**, Depo. of Lee, Tr., at 22-27), that one of his customers told him, "there's a guy a few rows up selling your identical pipe." (*Id*., at 22). Lee then walked with an associate of his, Robert Macleod, and found the Defendant Rajesh Shah, who had an exact replica of Lee's Six Shooter pipe on a display table. Lee testified that he introduced himself to the Defendant, showed him his patent, and told him that he was the person identified on the patent. Plaintiff also testified that he told the Defendant that he [Lee] "own[s] the rights to this pipe that you are selling the knockoff of," showed him the illustration on the patent, and said, "you cannot sell these." (*Id*. at 22-23). Lee testified that the Defendant said "okay," and nothing else. (*Id*. at 23). Plaintiff then took the Defendants' knock-off copy of his patented tobacco pipe and left with it (*Id*., at 23).

Plaintiff's testimony regarding his encounter with Defendant Shah at the ASD Trade Show on March 3, 2003, is supported by his associate, Robert Macleod, whose declaration is attached hereto as **Ex. F**.  Mr. Macleod confirms that he accompanied the Plaintiff when he handed a copy of the '936 Patent to Defendant Shah and warned Shah that his 6 Shooter pipe infringed his patent. (**Ex. F**, Pars. 2-4).

Plaintiff assumed that his warning to Defendant Shah would be sufficient to stop any further infringement, but he received word from a confidential client at the beginning of the year in 2004, that Defendants were still selling knock-off copies of Plaintiff's patented Six Shooter pipe (**Ex. E**, Depo. of Lee, Tr. at 27-28).  Plaintiff followed up by sending an e-mail to

Defendant Shah on February 24, 2004 (**Ex. D**, Lee Decl., Par. 2, Ex. 1) in which he warned Shah that he [Lee] would take legal action against him for not keeping to his agreement not to sell the infringing pipes (**Ex. E**, Depo. of Lee, Tr., at 27-28). Plaintiff received no response to this e-mail from Defendant.

In December, 2006, Plaintiff inquired of one of his customers on the East Coast, called Village Cadeau, why sales of tobacco pipes to his company had gone from $6,800 per year to zero. The customer replied that he had "been buying the knockoff from a guy locally," and that the seller of these knock-off copies was Defendant Accessories by Peak (**Ex. E**, Depo. of Lee, Tr., at 25-26). Then in January, 2007, Plaintiff had his brother call Defendants and asked if they had a pipe called the six shooter pipe. Defendants said that they did. Plaintiff then placed an order with Defendant for five of the infringing pipes, which were shipped to Plaintiff's father in Los Angeles (*Id*., at 26-27; **Ex. D,** Decl. of Lee, Par. 3, Ex. 2).

That the Defendants had actual knowledge of the '936 Patent from at least March 2003 is clear. Their refusal to comply with Plaintiff's warnings of patent infringement by their continued sale of infringing 6 Shooter tobacco pipes without seeking further information either from Plaintiff or, apparently, elsewhere, is evidence of objectively reckless behavior, such as that referred to by the Federal Circuit in the *Seagate* case, 497 F.3d at 1370-71, calling for enhanced damages under 35 U.S.C. § 284.

### 2. Defendants' Conduct with respect to the '936 Patent Warrants a Finding of Willful Infringement

The Federal Circuit held in *Seagate*, 497 F. 3d at 1371, that "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent.

*See Safeco,* 127 S.Ct. at 2215." The Federal Circuit further held that "the state of mind of the accused infringer is not relevant to this objective inquiry," but "if this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Id*. The record in this case demonstrates that Defendants acted willfully and without regard for the rights of the Plaintiff in respect of the '936 Patent. Although Defendants deny having been given notice of their infringement of the '936 Patent, the weight of the evidence is to the contrary - Defendants not only knowingly sold tobacco pipes that literally infringe the '936 Patent, but Defendants outrageously named and marketed the infringing pipes using Plaintiff's own trademark, "6 Shooter" (**Ex. H**, Depo. of Shah, Tr. at 26-27; **Ex. D**, Decl. of Lee Par. 3, Ex. 2).

In Defendants' Responses to Plaintiff's First Set of Interrogatories, dated February 4, 2008 (**Ex. G**), they appear to admit that they were warned, as indicated in Response Nos. 4 and 5, as follows:

INTERROGATORY 4:

State in detail the bases for Defendants' Affirmative Defense that the Plaintiff, JAKE LEE, failed to take reasonable actions to avoid and/or mitigate his damages.

ANSWER:

Mr. Jake Lee did not take any actions to inform the Defendants of the patent or trademark concerning any Six Shooter. Plaintiff failed to bring trademark or patent to attention of Defendants, for example, *via legal correspondence. Any warning was verbal and not backed up by written notice with verification.* (emphasis added).

INTERROGATORY 5:

State the date or dates when Defendants first learned of the '936 Patent; identify the person or persons at Defendants who first learned of the '936 Patent, identify who first brought the '936 Patent to Defendants' attention, and described the circumstances surrounding Defendants'

learning off the '936 patent.

ANSWER:

Actual knowledge of the '936 Patent was given to the Defendants pursuant to the filed lawsuit and the receipt of the copy of the attached patent filing.

*At the "ASDAMD" Trade Show in Las Vegas, Nevada, two men approached the Defendant, Rajesh Shah, and informed him that they held the patent for the Six Shooter.* That was 2 or 3 years ago. They did not display any patent; they did not describe any patent by name or number; they just mentioned that they held the patent for a six shooter pipe. A telephone call came from unknown individual after one year. (emphasis added).

Defendants' response that they did not receive notice by "legal correspondence," and that "[a]ny warning was verbal and not backed up by written notice with verification," is a non-denial denial. There is no requirement for legal notification with respect to actual notice. Defendant Shah does admit, however, that two men approached him at the ASD Trade Show and informed him that they held the patent for the Six Shooter, but he denies that they displayed any patent or described any patent by name or number.

During his deposition on March 18, 2008, Defendant Shah testified that he is the president and sole owner of co-defendant, Accessories by Peak (**Ex. H**, Depo. of Shah, Tr. at 9-10). While he stated in response to interrogatories that he first learned of the '936 Patent when this lawsuit was filed, he also testified that he remembers two people coming to his booth at the ASD Trade Show who were "telling me all these things . . . fighting with me . . . how can you sell this product, blah blah, blah . . . ." When Shah was asked which product the two men were referring to, he said that it was his 6 Shooter pipe (**Ex. H**, Depo. of Shah, Tr. at 26-27). Shah, however, denies that the two men told him about the '936 Patent, and that the first time he heard about the patent was when the suit was filed. (**Ex. H**, Depo. of Shah, Tr. at 31). When asked whether he had received the e-mail the Plaintiff sent to him on February 4, 2004 (Ex. D, Lee

9

Decl., Ex. 1),warning him about his infringement of his patent, Shah at first denied that he ever received it, and the admitted that "sometimes my son open my e-mail, sometimes my daughter, my e-mail opened by everybody in the family." (**Ex. H**, Depo. of Shah, Tr. at 58-59). Shah also testified that he remembers receiving a telephone call from someone regarding an agreement to stop selling the infringing pipes and that they talked about the 6 Shooter pipes. (**Ex. H**, Depo. of Shah, Tr. at 59-61). But despite the warnings from Plaintiff, Defendants' sales of infringing pipes continued into 2007 and after. (**Ex. H**, Depo. of Shah, Tr. at 78-79). And Defendant Shah is "not sure" whether or not he continued to sell infringing pipes after the commencement of the lawsuit (**Ex. H**, Depo. of Shah, Tr. at 78-80).

The shifting and evasive testimony of Defendant Shah is not credible. He was told about Defendants' infringement of the '936 Patent at the ASD Trade Show in March 2003. Both Plaintiff Lee and Mr. Macleod have confirmed that. Mr. Macleod says in his declaration that he saw Lee hand the patent to Shah. (**Ex. F**, Decl. of Macleod, Pars. 3-4). The e-mail that was sent to Shah was received by him, despite his testimony that his son or daughter might have opened it. He did receive a telephone call regarding his infringement, even though he does not recall who it was that he spoke with: "Somebody called me . . . I don't know who that was, Jake Lee or any Lee or any John Lee, I don't know." (**Ex. H**, Depo. of Shah, Tr. at 59). But this call was before the lawsuit ("very long" before) and "they talk about six Shooter pipe." (**Ex. H**, Depo. of Shah, Tr. at 59-61) .

The objective evidence is clear: Defendant Shah was given actual notice of Plaintiff's '936 Patent but chose to ignore it. Defendant took no steps, as far as the evidence presented shows, to investigate the matter or to take steps to obtain legal counsel to determine whether there was infringement of the '936 Patent. And the fact that the Defendants' 6 Shooter pipe is in

all material respects a copy of the Plaintiff's Six Shooter pipe, with the addition of an element not covered by the patent, is further objective evidence of willfulness. The Federal Circuit has also held that "[t]he willfulness *vel non* of infringement is determined by the totality of the circumstances." *Kaufman Company, Inc. v. Lantech, Inc.*, 807 F.2d 970, 979 (Fed. Cir. 1986) (citing *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983). In making a determination regarding enhanced damages, the Federal Circuit has identified several factors for courts to consider:

> "(1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; ... (3) the infringer's behavior as a party to the litigation;" (4) "defendant's size and financial condition;" (5) "closeness of the case;" (6) "duration of defendant's misconduct;" (7) "remedial action by the defendant;" (8) "defendant's motivation for harm;" and (9) "whether defendant attempted to conceal its misconduct."

Church & Dwight Co., Inc. v. Abbott Laboratories, 2008 WL 2565550 at *2 (D.N.J. 2008) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc.,* 449 F.3d 1209, 1225 (Fed.Cir.2006) (*quoting Read Corp. v. Portec. Inc.,* 970 F.2d 816, 826-27 (Fed.Cir.1992)).

The striking similarity between Plaintiff's and Defendants' pipes strongly compels the conclusion that it is a copy. Defendants have never proffered any evidence to the contrary. In fact, they have not even tried. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed. Cir. 1993) holding that the infringer's deliberate copying "was strong evidence of willful infringement without any exculpatory evidence to balance the weight." Defendants certainly knew of the patent at least as early as March 2003. It is highly unlikely that Plaintiff went to the trouble to confront Defendant at the ASD Trade Show without showing him his patent or at least giving him the patent number. Even so, Plaintiff's account is supported by Robert Macleod,

whose presence at the show is confirmed by Defendant's admission that he was confronted by two men. There is no evidence that Defendant ever took any steps to investigate the matter thereafter. And Defendant has presented no evidence in this case of prior use or sale of the infringing pipe to contradict the evidence of copying. This case does not involve many millions of dollars. However, Defendants' size and financial condition are commensurate with the extent of the sales of the infringing product. Defendants' overall sales are on the order of $400,000 per year. (**Ex. H**, Depo. of Shah, Tr. at 24). Enhanced damages based on sales of the infringing 6 Shooter pipes will be reasonable based on overall sales of that order. Defendant has presented no evidence of non-infringement or of invalidity of the patent, but has conceded validity and enforceability. The case for infringement is not close, infringement being literally established. Defendants' infringement continued unabated from March 2003 with no remedial action being taken to avoid further infringement. And, as the court in *Church & Dwight Co., Inc.*, *supra* at *5 held: "While . . . mere ordinary competition does not satisfy this factor [motivation for harm], willful infringement by a direct competitorin a competitive market when the infringer did not have a strong basis to believe that the patents were invalid, does." (citing *nCube Corp. v. SeaChange Intern., Inc.*, 313 F. Supp.2d 361, 390 (D.Del. 2004). Defendants have clearly attempted to conceal their misconduct by ignoring Plaintiff's warnings and actual notice of infringement.

     The bases for a finding of willfulness are clearly present here and the Court should grant Plaintiff's motion for a summary judgment of willful infringement.

## II.     CONCLUSION

For all of the reasons given above, the Court should grant Plaintiff's motion for a partial summary judgment of willful infringement by Defendants and order an accounting to determine the full extent of the damages due to plaintiff as a result thereof.

Respectfully submitted,

November 20, 2008                                    By: s/ Dariush Keyhani

                                                          Dariush Keyhani (DK9673)
Sidney R. Bresnick (*Pro Hac Vice* admission pending)
Meredith & Keyhani, PLLC
81 Linwood Avenue
Buffalo, New York 14209
Telephone: (716) 898-8938
Facsimile: (716) 299-2499
*Attorneys for Plaintiff*