UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JAKE LEE,

                              Plaintiff,

              -vs-                                    07-CV-338-JTC

ACCESSORIES BY PEAK, RAJESH SHAH,

                              Defendants.

---

This is an action brought by plaintiff Jake Lee, owner of United States Patent No. 6,418,936, issued on July 16, 2002 for a "tobacco pipe" ("the '936 Patent"), seeking injunctive relief and damages for patent infringement under Title 35 of the United States Code, and for common law trademark infringement. As alleged in the complaint, plaintiff "is an individual who does business throughout the United States and is located in West Hollywood, CA." Item I, ¶ 4. Plaintiff claims that he has continuously used the trademark "Six Shooter" in connection with the sale of products covered by the '936 Patent, and that defendant Rajesh Shah, owner and president of Accessories by Peak, Inc., infringed the patent and trademark by selling nearly identical products under the trademark "6 Shooter." *See* Item 1, ¶¶ 10-16.

Plaintiff moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on his claim for enhanced damages based on willful infringement of the '936 Patent. Plaintiff also requests that the court order an accounting to determine the amount of damages due.

For the reasons that follow, plaintiff's motion for partial summary judgment is granted in part and denied in part.

**BACKGROUND**

As reflected in the transcript of plaintiff's deposition, taken by telephone on September 16, 2008 (Item 17, Ex. E), plaintiff first became aware of defendant's alleged infringing activities in March 2003 while attending a merchandise trade show in Las Vegas. He was informed by a customer at the show that there was a vendor selling a pipe identical to the Six Shooter. Plaintiff testified that he retrieved a manila folder containing a copy of the '936 Patent, which he always brings along when he attends a trade show, and took a walk with an associate, Robert Macleod, to seek out the vendor. They proceeded to a nearby booth where defendant Rajesh Shah was displaying what appeared to be an exact replica of plaintiff's Six Shooter pipe. Plaintiff testified that he introduced himself to Mr. Shah, showed him the patent, and told him that he owned the patent as well as the rights to the pipe identified on the patent. Plaintiff testified that he told Mr. Shah, "you cannot sell these," to which Mr. Shah replied, "Okay." Plaintiff took the replica pipe from the display, along with Mr. Shah's business card, and walked away. *Id*. at 22-23.

Plaintiff testified that in early 2004 he received word from a client that Mr. Shah and his company, Accessories by Peak, Inc., were still selling replicas of plaintiff's Six Shooter pipe. On February 24, 2004, plaintiff sent Mr. Shah an e-mail stating:

> Dear Rajesh,
> I just received word that you are still selling knockoffs of my "Patented" pipe. You agreed that you would stop selling them and you are not keeping to your agreement. Therefore, you leave me no choice but to take legal action against you. You will be receiving a letter from my attorney and a law suit will soon follow. In America, we take Patent infringement very seriously.

Item 17, Ex. D, Attachment 1. Plaintiff received no response to this e-mail.

Plaintiff testified that in December 2006 he called one of his customers on the East Coast to inquire about the substantial drop in sales of his pipes. The customer replied that he had been buying a "knockoff" locally from Accessories by Peak. In January, 2007, plaintiff had his brother place an order with Accessories by Peak for five of the pipes, which were shipped to plaintiff's father's business address in Los Angeles. Item 17, Ex. E, at 26-27; *see also id.*, Ex. D, Att. 2.

Plaintiff filed this action in May, 2007. On December 14, 2007, this court entered an order upon consent of the parties, adjudging and decreeing that:

> 1. The '936 Patent was duly and legally issued to Jake Lee as inventor of the subject matter of the '936 Patent, including all right to recover for past infringement thereof.
>
> 2. The '936 Patent is valid and enforceable.
>
> 3. Defendants, their officers, agents, servants, employees, attorneys, and all other persons acting in concert, participation or privity with them, and their successors and assigns are hereby permanently enjoined and restrained from infringing, contributorily infringing or inducing the infringement of the '936 Patent by making, using, selling and/or offering for sale any and all pipes as described in the '936 Patent and/or equivalence [sic] under the doctrine of equivalence in U.S. patent law.
>
> 4. The Court shall retain continuing jurisdiction over this action for the purposes of enforcing the terms of this Order and/or Settlement between the parties.

Item 7.

When efforts to reach informal settlement of the lawsuit failed, plaintiff filed his motion for partial summary judgment seeking an order declaring that defendants have infringed the '936 Patent by selling the "6 Shooter" tobacco pipe, and that the infringement

was willful. Plaintiff also requests that the court order an accounting to determine damages.

## DISCUSSION

**A.      Summary Judgment Standard**

The standard for determining a motion for summary judgment in a patent infringement case is the same as in any other type of action. *See Alloc, Inc. v. Norman D. Lifton Co.*, 653 F. Supp. 2d 469, 473 (S.D.N.Y. 2009) (citing *Union Carbide Corp. v. Am. Can Co.*, 724 F.2d 1567, 1571 (Fed.Cir. 1984)). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

The moving party initially bears the burden of demonstrating that no genuine issues of material fact remain to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this showing is made, the non-moving party may not rely solely on "[c]onclusory allegations, conjecture, and speculation," but must come forward with specific facts demonstrating that there is a genuine issue for trial. *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citations and internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(e)(2). The court resolves all ambiguities and draws

all factual inferences in favor of the non-moving party, but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)).

In this case, there can be no dispute that the '936 Patent has been adjudged valid and enforceable by the court in the consent order of December 14, 2007. *Cf. Stein Industries, Inc. v. Jarco Industries, Inc.*, 33 F. Supp. 2d 163, 171 (E.D.N.Y. 1999) (consent judgment conclusively established issues of patent validity and infringement); *Wallace Clark & Company, Inc. v. Acheson Industries, Inc.*, 394 F. Supp. 393, 400-02 (S.D.N.Y. 1975) (consent decree was *res judicata* as to issues of validity and infringement of patent), *aff'd*, 532 F.2d 846 (2d Cir.), *cert. denied*, 425 U.S. 976 (1976). Accordingly, the only issues remaining for determination with respect to the '936 Patent are infringement and damages, including whether enhanced damages for willful infringement are warranted. Plaintiff contends that he is entitled to entry of summary judgment on these remaining issues.

**B.     Patent Infringement**

Pursuant to 35 U.S.C. § 271(a), "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." Because patent infringement is "a strict liability offense," *In re Seagate Technology, LLC*, 497 F.3d 1360, 1368 (Fed.Cir. 2007), *cert. denied sub nom. Convolve, Inc. v. Seagate Technology, LLC*, ___U.S.___, 128 S.Ct. 1445 (2008); *see also Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc.*, 62 F.3d 1512, 1527 (Fed.Cir. 1995), the courts have found

that intent is not an element of a direct infringement claim, and neither ignorance of the patent nor good faith belief in non-infringement is a defense to a charge of infringement under section 271(a).  *See In re Omeprazole Patent Litigation*, 490 F. Supp. 2d 381, 413 (S.D.N.Y. 2007) ("Making, using, selling, or offering to sell matter covered by a patent without authority of the owner constitutes infringement regardless of knowledge or intent."), *aff'd*, 281 Fed.Appx. 974 (Fed. Cir. 2008), *cert.denied sub nom. Apotex Corp. v. Astrazeneca AB*, ___U.S.___, 129 S.Ct. 1593 (2009); *see also Metal Film Co. v. Metlon Corp.*, 316 F. Supp. 96, 111 n. 15 (S.D.N.Y. 1970) ("neither lack of knowledge of the patent nor lack of intent to infringe is a defense on the issue of infringement.").

      Generally, patent infringement analysis involves two steps.  The first step involves construction of the patent claims by establishing the scope and boundaries of the subject matter covered by the patent, and the second step involves comparing the properly construed claims to the allegedly infringing device.  *See Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 386 F. Supp. 2d 526, 531 (S.D.N.Y. 2005) (citing *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 384-85 (1996)).  This court has held that where there is no viable dispute over either the language of the patent claims or the structure of the accused device, the issue of infringement may be resolved as a matter of law on a motion for summary judgment.  *See Moore U.S.A. Inc. v. The Standard Register Company*, 144 F. Supp. 2d 188, 191-92 (W.D.N.Y. 2001); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed.Cir. 2001) (infringement is properly decided upon summary judgment when no reasonable jury could find that every limitation

recited in the properly construed claim either is or is not found in the accused device), *cert. denied*, 534 U.S. 1114 (2002).

In this case, plaintiff has submitted a copy of the patent specification setting forth 18 claims which fully describe the subject matter of the '936 Patent (Item 17, Ex. B); a claim chart showing literal infringement of Claims 1-6, 8-9 and 11-14 by the offending product (*id.*, Ex. C); and a series of photographs demonstrating substantial similarity between plaintiff's patented product and the product obtained from defendants (*id.*, Ex. D, Att. 3). In addition, in his "Statement of Material Facts" submitted pursuant to Rule 56.1(a) of the Local Rules of Civil Procedure for the Western District of New York,[1] plaintiff states (among other things) that "[d]efendants have literally infringed claims 1-6, 8-9 and 11-14 of the '936 Patent." Item 16, ¶ 3. Defendants have not responded to this statement as required by Local Rule 56.1(b), and the statement remains otherwise uncontroverted by defendants' "Reply Affidavit" (Item 18). Accordingly, it must be deemed admitted for the purposes of plaintiff's summary judgment motion, pursuant to Local Rule 56.1(c).

Moreover, the transcript of Mr. Shah's March 18, 2008 deposition reflects his sworn admission on record that, as an importer and seller of merchandise from a supplier in India, he has sold as many as 300 so-called "6 Shooter" pipes amounting to approximately

---

[1] Local Rule 56.1(a) requires the party moving for summary judgment to submit "a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Loc. R. Civ. P. 56.1(a). In response, the party opposing the motion must submit "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried." Loc. R. Civ. P. (W.D.N.Y.) 56.1(b). Under Local Rule 56.1(c), "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

$3,000 in sales. *See, e.g.*, Item 18, Ex. B, at 28, 32-36, 50-51; *see also* Item 17, Ex. G.[2] Indeed, it is undisputed that he displayed "an apparent knock-off of the Plaintiff's so-called 'six shooter' pipe"at the March 2003 trade show in Las Vegas (Item 18, ¶ 7), and later sold five of the "knock-off" pipes to plaintiff's brother (Item 17, Ex. D, Att. 2).

In response to plaintiff's motion, defendants have not addressed plaintiff's argument regarding construction of the claims or comparison of the patented and accused products. Instead, defendants contend that genuine issues of material fact remain regarding the adequacy of notice of infringement, as required under 35 U.S.C. § 287 (*see generally* Item 18). Somewhat more specifically, while Mr. Shah admits that he was confronted by two individuals at the March 2003 trade fair, he denies that he was shown a copy of the '936 Patent, then or at any other time (*see* Item 18, ¶¶ 8-11). He also denies that he ever received, opened, or read the February 24, 2004 e-mail message (*id.* at ¶¶ 13-15), and challenges the content of the e-mail as legally inadequate under the statutory notice requirements (*id.* at 16-22).

As established in the *Omeprazole Patent Litigation* decision and other cases cited above, lack of knowledge or intent is not a viable defense to a charge of direct patent

---

[2]Item 17, Ex. G, is a copy of "Defendant's responses to Plaintiff's First Set of Interrogatories." Interrogatory 9 asks:

> Identify and provide the total sales in U.S. dollars . . . from the date of first sale to either the last date of sale or up to the last available date for all sales generated from the sale of all pipes sold by Defendants.
>
> ANSWER:
>
> Defendants object to the question insofar as the phrase "pipes" is used herein. If the Plaintiff seeks information about the patented or so-called "Six Shooter" pipes, the Defendants assert that approximately 300 "Six Shooter" type pipes were sold over the course of the Defendants' placement of the items into commerce.
> Approximately Three Thousand Dollars ($3000.00).

infringement under section 271(a). Accordingly, the issue as to whether Mr. Shah received legally adequate notice of either the existence of the patent or the alleged infringement activity is irrelevant to the court's infringement analysis. The question of notice is, however, pertinent to the issues of recoverability and enhancement of damages, and is addressed in that context in the discussion below.

Based on the record presented on plaintiff's motion, it is clear to the court that no rational trier of fact could find in favor of defendants on the issue of infringement, and defendants have come forward with no evidence to suggest that any genuine issues of material fact remain to be tried in this regard. Plaintiff is therefore entitled to partial summary judgment in his favor on his claim that defendants' sales of the "6 Shooter" tobacco pipe have infringed the '936 Patent.

**C.     Damages**

Plaintiff also seeks summary judgment on his claim for enhanced damages under section 284, which provides:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.
>
> When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed. . . .

35 U.S.C. § 284. The determination whether to award enhanced damages for infringement, as well as the extent of the enhancement, is committed to the discretion of the trial court. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir. 1992), *abrogated in part on other grounds by Markman v. Westview Instruments, supra*. In the absence of

any statutory standards to guide the court's exercise of discretion in this regard, the cases have established the principle that "an award of enhanced damages requires a showing of willful infringement." *Seagate*, 497 F.3d at 1368.

In the *Seagate* case, the Federal Circuit re-examined the standard for evaluating willful infringement fashioned in *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed.Cir. 1983),[3] and announced a new heightened, two-prong standard:

> [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer. We leave it to future cases to further develop the application of this standard.

*Seagate*, 497 F.3d at 1371.

More recently, the Federal Circuit has clarified that the two-pronged *Seagate* test for establishing willfulness as a prerequisite for an award of enhanced damages under section 284 is "distinct and separate" from the factors guiding a district court's discretion regarding whether--and by how much--to enhance damages. *i4i Ltd. Partnership v. Microsoft Corp.*, 589 F.3d 1246, 1274 (Fed.Cir. 2009). Those factors were set forth in *Read* as follows:

---

[3]The standard announced in *Underwater Devices* provided:

> Where ... a potential infringer has actual notice of another's patent rights, he has an affirmative duty to exercise due care to determine whether or not he is infringing. Such an affirmative duty includes, *inter alia*, the duty to seek and obtain competent legal advice from counsel before the initiation of any possible infringing activity.

*Underwater Devices*, 717 F.2d at 1389-90.

-10-

> (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; . . . (3) the infringer's behavior as a party to the litigation; (4) defendant's size and financial condition; (5) closeness of the case; (6) duration of defendant's misconduct; (7) remedial action by the defendant; (8) defendant's motivation for harm; and (9) whether defendant attempted to conceal its misconduct.

*Read*, 970 F.2d at 826-27.

In *i4i Ltd.*, the district court submitted the question of willful infringement to the jury, which was instructed that the patentee had to prove by clear and convincing evidence that the infringer (1) was aware of the patent; (2) acted despite an objectively high likelihood that its actions infringed a valid patent; where (3) this objectively high risk was either known or so obvious it should have been known to the infringer. *i4i Ltd.*, 589 F.3d at 1273. The Federal Circuit found these instructions to be proper under *Seagate*. *Id*. at 1274.

In this case, plaintiff argues that he is entitled to summary judgment on the issue of willful infringement, based on the objective evidence in the record which clearly and convincingly establishes that (1) Mr. Shah was aware of plaintiff's patent for the "Six Shooter" pipe, having received actual notice of the '936 Patent by way of both the encounter at the trade fair in March 2003 and the February 24, 2004 e-mail; (2) Mr. Shah continued to offer the replica "6 Shooter" for sale despite the objectively high likelihood that this might infringe a valid patent; and (3) the risk of infringement was known to Mr. Shah, or so obvious it should have been known. In response, as alluded to above, Mr. Shah denies that he was shown a copy of the '936 Patent, either at the March 2003 trade fair or at any other time, and he also denies that he ever received, opened, or read the February 24, 2004 e-mail message. According to defendants' argument, Mr. Shah's denials raise

genuine issues of material fact with respect to both the question of willfulness and the question of adequate notice under section 287.[4]

Section 287(a), sometimes referred to as the "marking statute," *see, e.g., Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed.Cir. 2009), provides as follows:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). This provision serves the three related purposes of (1) helping to avoid innocent infringement, (2) encouraging patentees to give notice to the public that the article is patented, and (3) aiding the public to identify whether an article is patented. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed.Cir. 1998), *cert. denied*, 528 U.S. 946 (1999). Under its clear language, a patentee is entitled to damages from the time when it either began marking products in compliance with section 287(a), or when it

---

[4]Defendants cite section 287(b)(5)(A) as statutory authority for their "lack of adequate notice" argument. That section provides:

> For purposes of this subsection, notice of infringement means actual knowledge, or receipt by a person of a written notification, or a combination thereof, of information sufficient to persuade a reasonable person that it is likely that a product was made by a process patented in the United States.

35 U.S.C. § 287(b)(5)(A). However, subsection (b) of section 287 pertains to remedies for infringement of a process patent under section 271(g), and the notice provision of subsection (b)(5)(A) is therefore inapplicable to plaintiff's product infringement claim in this case.

-12-

notified the infringer through actual notice, whichever is earlier.  *American Medical Systems, Inc., v. Medical Engineering Corp.*, 6 F.3d 1523, 1537 (Fed.Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994); *see also Hako-Med USA, Inc. v. Axiom Worldwide, Inc.*, 2009 WL 2762158, at *1 (M.D.Fla. 2009).

Section 287(a) permits either constructive notice, accomplished by marking the product with the patent number, *see, e.g., American Medical Systems*, 6 F.3d at 1538, or actual notice, defined as "the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed.Cir. 1994).  The patentee has the burden to prove, by a preponderance of the evidence, compliance with the marking statute.  *Nike*, 138 F.3d at 1446.  While the issue of compliance is a question of fact, it may--like the issue of infringement--be properly decided on summary judgment "when no reasonable jury could find that the patentee either has or has not provided actual notice to the particular defendants by informing them of his patent and of their infringement of it."  *Amsted*, 24 F.3d at 187 (internal quotation marks and citation omitted).

In this case, there is nothing in the pleadings or discovery materials on file to show or suggest that plaintiff provided constructive notice by marking the product.  With regard to actual notice, the preponderance of the evidence presented by way of the parties' deposition testimony, responses to interrogatories, affidavits, and other submissions leaves little doubt that plaintiff provided Mr. Shah with actual notice of infringement by affirmatively communicating to him at the trade show in March 2003 that the sale of the "6 Shooter" pipe was an infringement of plaintiff's patent for the "Six Shooter" pipe.  As alluded to above,

Mr. Shah admitted at his deposition that two individuals approached his booth at the March 2003 trade show and told him that he could not sell the "6 Shooter" pipe he had on display because it was their product. Plaintiff testified that he showed Mr. Shah a copy of the '936 Patent and explained that he was the owner of the rights to the pipe. This testimony is supported by Mr. Macleod's affidavit, stating that he was with plaintiff at the March 2003 trade show; he observed plaintiff hand Mr. Shah a copy of the '936 Patent; he observed Mr. Shah holding the patent in his hand and looking at it; and he heard plaintiff warn Mr. Shah that the "6 Shooter" pipe he was selling infringed the '936 Patent (see Item 17, Ex. F, ¶¶ 3, 4).

Mr. Shah's denial that plaintiff ever showed him a copy of the patent is to no avail. As held by the Federal Circuit in *Amsted*:

> For purposes of section 287(a), notice must be of "the infringement," not merely notice of the patent;'s existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device. . . . It is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement. The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer.

*Amsted*, 24 F.3d at 187.

Based on this analysis, the court finds by a preponderance of the evidence presented on the summary judgment record that plaintiff has established compliance with the notice requirements of section 287(a), entitling him to recovery of damages for defendants' infringement of the '936 Patent occurring after March 2003.

This record also clearly and convincingly establishes that, notwithstanding his awareness of plaintiff's patent, Mr. Shah continued to offer the replica "6 Shooter" for sale despite the objectively high likelihood that this might infringe the patent, and that the risk

of infringement was either known to Mr. Shah or so obvious it should have been known. Accordingly, the court finds that plaintiff has satisfied the two-pronged *Seagate* test for establishing willfulness as a prerequisite for an award of enhanced damages under section 284.

Once the prerequisite for enhancement is established, the court looks to the totality of circumstances to determine the egregiousness of the defendant's infringing conduct, guided by the factors set forth in the *Read* decision. "Although willful infringement may authorize the award of enhanced damages, 'a finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages.'" *Informatica Corp. v. Business Objects Data Integration, Inc.*, 489 F. Supp. 2d 1075, 1084 (N.D.Cal. 2007) (quoting *Read*, 970 F.2d at 826). However, having found willfulness, the court "should provide reasons for not increasing a damages award . . . ." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed.Cir. 1996).

The court therefore turns to an examination of the nine *Read* factors as a guide for determining whether to award enhanced damages under the circumstances presented on the record in this case.

### 1. Whether the Infringer Deliberately Copied the Ideas or Design of Another

The evidence in the case is clear that defendants did not manufacture the infringing product, but instead operated only as an importer or agent of an unidentified manufacturer, presumably located in India. This infringement action is based entirely on defendants' sale or offering to sell the infringing product, and there is no allegation or proof that defendants

deliberately copied plaintiff's ideas or design. Accordingly, this factor weighs against enhancement of damages.

2. **Whether the Infringer, When He Knew of the Other's Patent Protection, Investigated the Scope of the Patent and Formed a Good-faith Belief That it Was Invalid or That it Was Not Infringed**

There is no evidence in the discovery materials on file, or presented by way of affidavit, to indicate that Mr. Shah took any action to investigate the scope of the patent protection brought to his attention at the March 2003 trade show. Accordingly, this factor weighs in favor of enhancement of damages.

3. **The Infringer's Behavior as a Party to the Litigation**

Shortly after issue was joined in this matter, defendants consented to entry of a permanent injunction against further sales of the infringing product, and there is nothing in the litigation record to suggest that defendants' conduct should otherwise weigh in favor of enhancement of damages.

4. **Defendant's Size and Financial Condition**

Based on the record presented, it is evident that both parties' commercial enterprises consist of one-person operations, each reporting relatively small, comparable sales revenues. Accordingly, this factor does not weigh in favor of enhancement.

5. **Closeness of the Case**

As the discussion above demonstrates, the case for infringement is not a close one. Indeed, defendants have not denied the infringing activity, and did not forcefully contest

plaintiff's summary judgment motion in this regard. Accordingly, this factor weighs in favor of enhancement.

### 6. Duration of Defendant's Misconduct

The evidence presented indicates that the infringing conduct occurred, and continued, during the period between at least March 2003, when defendants received actual notice of the infringing conduct, and January 2007, when the last documented infringing sale took place. Accordingly, this factor weighs in favor of enhancement.

### 7. Remedial Action by the Defendant

This factor looks to whether the defendant ceased the sale of the infringing product during the pendency of the litigation. *Read*, 970 F.2d at 827*; see also Creative Internet Advertising Corp. v. YahooA Inc.,* ___F. Supp. 2d___, 2010 WL 446571, at *9 (E.D.Tex. February 1, 2010). As discussed above, shortly after this lawsuit was filed defendants consented to entry of a permanent injunction against any further infringing sales, and there is no evidence that sales continued in violation of this order. Accordingly, this factor does not weigh in favor of enhancement.

### 8. Defendant's Motivation for Harm

Based on the record presented, there is no evidence of defendants' motivation for the infringing conduct beyond the sale of one "lot" of pipes obtained from the supplier/agent in India, amounting to a profit to defendants of somewhere between $3,000.00 and $4000.00. Accordingly, this factor does not weigh heavily in favor of enhancement.

### 9. Whether Defendant Attempted to Conceal its Misconduct

The record reflects no evidence of concealment.

Based on the totality of these circumstances, the court finds that only three of the *Read* factors weigh in favor of enhancement of damages, while six of the factors weigh against enhancement. Accordingly, plaintiff is not entitled to summary judgment on his claim for enhanced damages under section 284.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for partial summary judgment is granted to the extent it seeks an order declaring that defendants' sales of the "6 Shooter" tobacco pipe have infringed the '936 Patent, and that plaintiff is entitled to recover damages based on defendants' infringement activity occurring after March 2003. Plaintiff's motion for partial summary judgment is denied to the extent it seeks enhancement of damages for willful infringement.

Finally, plaintiff's motion is granted to the extent it seeks an order directing an accounting to determine the amount of damages due. The matter is hereby referred to Hon. H. Kenneth Schroeder, Jr., United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), (B) and (C), to conduct all proceedings necessary to accomplish this directive, including settlement negotiations if appropriate. All motions or applications within the scope of this reference shall be filed with the Clerk of the Court and made returnable before Magistrate Judge Schroeder.

The parties are also encouraged to consider the provisions of 28 U.S.C. § 636(c) governing consent to complete disposition of the case (including trial, if necessary) by the

Magistrate Judge. Instructions and forms for use under those provisions are available from the office of the Magistrate Judge or the Clerk.

So ordered.

\s\ John T. Curtin  
JOHN T. CURTIN  
United States District Judge

Dated:   March 31 , 2010
p:\pending\2007\07-338.mar8.10